12 CV 8052

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BARONSMEDIA.COM LLC
a California corporation,
4111 W. Alameda Avenue, Suite 503
Burbank, CA  91505

              Plaintiff,

    v.

PULSEPOINT, INC.
a Delaware company,
f/k/a ContextWeb, Inc.
345 Hudson Street, 5th Floor
New York, NY  10014

           Defendant.

NOV 0 5 2012

No. _____

COMPLAINT

**JURY TRIAL DEMANDED**

### COMPLAINT

1.    By this action, BaronsMedia.com LLC ("Barons") seeks to recover more than $400,000 in damages arising from ContextWeb, Inc.'s ("ContextWeb") material breach of contract that governed its relationship with Barons.  ContextWeb, now known as PulsePoint, Inc. ("PulsePoint"), has refused without legal justification to remit to Barons payments due under contact known as the "CONTEXTWEB Placement Order" ("Placement Order").  The Placement Order is attached hereto as **Exhibit 1**, and the invoices that have not been paid under the Placement Order are attached hereto as **Exhibit 2**.

### PARTIES

2.    Plaintiff Barons is a corporation organized and existing under the laws of California with its principal place of business at 4111 W. Alameda Avenue, Suite 503, Burbank, California 91505.

3.     Defendant PulsePoint is a corporation organized and existing under the laws of Delaware with its principal place of business at 345 Hudson Street, 5th Floor, New York, New York 10014.  According to a letter to counsel for Barons dated October 26, 2012, from PulsePoint's General Counsel Steven Vine, PulsePoint is the successor to ContextWeb.

### JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to Article III, §2 of the United States Constitution and 28 U.S.C. § 1332(a) (1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Pursuant to the Paragraph 7(b) of the Placement Order, the parties consented to the jurisdiction of this Court.  Further, PulsePoint is located in this judicial district and conducts substantial business here.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) & (3) because PulsePoint resides in this judicial district and is subject to personal jurisdiction here.

### FACTS

7.     Barons and ContextWeb, Inc. entered into a binding written contract, the "Placement Order," on October 6, 2011.  Based on information and belief, ContextWeb and another company, Datran Media, merged to become PulsePoint around this time, and PulsePoint became the successor to ContextWeb by reason of the merger.  Therefore, ContextWeb's liabilities became the liabilities of PulsePoint, and PulsePoint became responsible for fulfilling ContextWeb's obligations under the Placement Order.  Accordingly, Barons sues PulsePoint for the amounts owed under the Placement Order.

8.     Under the Placement Order, Barons agreed to place text advertisements, graphic files and/or rich media on certain web sites provided to ContextWeb by third-party advertisers.

2

In exchange, ContextWeb agreed to pay Barons $0.20 per thousand impressions delivered to ContextWeb as reported by ContextWeb.

      9.     Barons invoiced ContextWeb for amounts due under the Placement Order. Barons required that ContextWeb pay each invoice within thirty days of issuance of each invoice.

      10.    ContextWeb failed to pay the following invoices attached hereto as **Exhibit 2**:

          a.    Invoice No. 5571 dated June 30, 2012, in the amount of $78,597.69.

          b.    Invoice No. 5642 dated July 31, 2012, in the amount of $137,451.88.

          c.    Invoice No. 5695 dated August 31, 2012, in the amount of $188,329.52.

          d.    Invoice No. 5760 dated September 30, 2012, in the amount of $43,406.10.

      11.    Barons performed all of its obligations under the Placement Order.

      12.    All conditions precedent to the maintenance of this action have been fulfilled.

## COUNT I
### (Breach of Contract)

      13.    Barons re-alleges and incorporates herein the allegations set forth in Paragraphs 1 through 12 above.

      14.    The Placement Order is a binding contract under which ContextWeb contracted to pay Barons under the Placement Order for services Barons provided.

      15.    Barons provided the services it was required to provide under the Placement Order, and otherwise performed all of its obligations under the Placement Order. In particular, Barons placed text advertisements, graphic files and/or rich media on certain web sites provided to ContextWeb by third-party advertisers, and otherwise complied with and performed its obligations under the Placement Order.

3

16.     ContextWeb failed to pay Barons $447,785.19 for services that Barons provided under the Placement Order, thereby materially breaching the Placement Order. $447,785.19 remains due and owing.

17.     As a direct result of ContextWeb's failure to pay under the Placement Order, Barons has suffered damages in an amount not less than $447,785.19.

18.     PulsePoint is obligated to fulfill ContextWeb's obligations under the Placement Order because PulsePoint is the successor to ContextWeb as alleged above.

**WHEREFORE**, Barons demands that judgment be entered in its favor and against PulsePoint as follows:

a.     That Barons be awarded damages in an amount not less than $447,785.19;

b.     That Barons be awarded pre-judgment and post-judgment interest at the statutory rate;

c.     That Barons be awarded its costs of suit; and

d.     That Barons be awarded such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Barons demands trial by jury of all issues triable of right by a jury.

\* \* \*

4

November 5, 2012

J. Douglas Baldridge (Bar No. JB8385)
Ari N. Rothman (*pro hac vice to be filed*)
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
anrothman@venable.com

*Attorneys for BaronsMedia.com LLC*

# **<u>Exhibit 1</u>**

 **CONTEXTWEB**

## CONTEXTWEB Placement Order

10/6/2011

PO Number

Publisher Name     **Barons REVSHARE Sept 11- open Revised**

Contact     **jim larkin**
Phone     **(818) 237-5761 x 109**
Fax
Email     **jim@baronsmedia.com**
Website     **baronsmedia.com**

**Sales Contact**

David Schwartz
Manager, Publisher Development
(917) 408-6308
f(646) 219-8295
dschwartz@contextweb.com

**Billing**

Address     **4111 W. Alameda Ave,**
            **Ste 503 Burbank, CA.**
            **91505**
City, State Zip

**Placement Specifications**

| Start Date | End Date | Category | Impressions | Total |
|---|---|---|---|---|
| 10/7/2011 | Open | Revshare Publisher 160x600 | | unlimited |
| 10/7/2011 | Open | Revshare Publisher 300x250 | | unlimited |
| 10/7/2011 | open | Revshare Publisher 728x90 | | unlimited |

**Special Terms:**

Minimum Floor .20 CPM as of 10/07/2011

Revshare tags 70% to publisher, 30% to Contextweb
Graphical Units
All placements will be above the fold.
Frequency Cap of 6 impressions per 24 hours
US inventory only
No download inventory
Billing based on ContextWeb reporting
IP must be able to accept JavaScript tags
Even delivery of inventory is expected
Ads may not be placed behind a registration system without prior written approval from ContextWeb

Approved By _david schwartz_
CONTEXTWEB, Inc.

Approved By _Jim Larkin_
Jim Larkin (Oct 6, 2011)

Printed Name          **David Schwartz**

Printed Name     Jim Larkin

Date          10/6/2011

Date     Oct 6, 2011

By your signature indicating approval of this insertion order, you also agree to the below Terms and Conditions.

### CONTEXTWEB TERMS AND CONDITIONS

These Terms and Conditions are entered into between CONTEXTWEB and the party executing the accompanying Placement Order ("Inventory Partner" or "IP"), and supersede and replace all prior terms and conditions between the parties related to Placement Orders ("POs"). These Terms and Conditions shall control all existing POs, and together with each additional, executed PO shall be referred to collectively as the "Agreement".  Terms not

## CONTEXTWEB

defined in these Terms and Conditions shall have the meanings set forth in the applicable PO. To the extent there is a conflict between any PO and these Terms and Conditions, the PO shall control.

**1. Campaigns.**

a.  Inventory Partner agrees to place on the web sites or URL's listed on the PO (the "Website(s)") text advertisements, graphic files and/or rich media (collectively, "Advertisements") provided to ContextWeb by third party advertisers (the "Advertisers"). For the avoidance of doubt, "Website" includes any web site inventory on which ContextWeb's tags are placed by or on behalf of IP and any web site inventory that IP otherwise causes Advertisements supplied by ContextWeb's Advertisers to be displayed, regardless of whether the URL for such web site inventory is listed on the PO.    IP will notify ContextWeb within one (1) business day of receipt of this PO if the specified inventory is not available (in which case ContextWeb shall not be liable for any payments).  Technical specifications must be provided to ContextWeb no later than two (2) business days following receipt of the PO.

b.  Either  party may cancel any PO at any time with twenty-four (24) hours prior written notice to the other party.

c.  Payment will be made for impressions delivered based on reporting provided by CONTEXTWEB's third party ad server.

d.  IP will use commercially reasonable efforts to provide a balanced delivery of impressions.  IP will comply with all ad placement restrictions set forth in the applicable PO.  IP shall monitor delivery of the Advertisements, and shall notify ContextWeb in writing as soon as possible if underdelivery is likely. In the event any campaign fails to meet guaranteed levels, the parties may agree upon a makegood.  If no makegood is agreed upon, ContextWeb may deduct an amount or require a refund equal to the value of the underdelivered portion of the PO.  In no event shall IP provide a makegood or extend the length of any campaign without ContextWeb's prior written consent.  IP may bonus impressions or clicks provided that ContextWeb will not be charged for any additional advertising units above any level guaranteed in the applicable PO.

e.  IP acknowledges that CONTEXTWEB has no responsibility for reviewing the content of any Advertising appearing on the Website.  IP shall not revise or modify the creative or content of any Advertisement.  IP may request removal of any Advertisement it reasonably finds objectionable, provided that it first provides CONTEXTWEB with reasonable prior written notice.

f. CONTEXTWEB reserves the right to terminate this PO if, in its sole discretion, it determines that the Website is of poor quality or CONTEXTWEB reasonably believes that the Website is likely to cause damage or injury to CONTEXTWEB or the reputation of CONTEXTWEB.

**2. Payment.**

a.  ContextWeb and IP will share the Net Advertising Revenue as set forth in the applicable PO. "Net Advertising Revenue" means the amounts billed to ContextWeb's Advertisers for the placement of Advertisements on the Website(s), less any applicable third party fees (such as agency commissions and ad serving fees), discounts, bad debt, and refunds to Advertisers.

b.  ContextWeb shall use commercially reasonable efforts to provide IP with login access so that IP may obtain preliminary reporting, on a daily basis, on amounts payable to IP. Subject to ContextWeb's right to later adjust payment, as described below, ContextWeb will provide final reporting pay IP within forty-five (45) days following the end of the applicable month and will issue payment to IP in US dollars based on such reporting.   ContextWeb reserves the right to adjust payment, if necessary, based upon ContextWeb's receipt of payment from Advertisers.  Any overpayments or underpayments from fraudulent or invalid clicks or impressions, Advertiser credits, chargebacks or other reasons deemed necessary in the sole and exclusive discretion of ContextWeb shall be adjusted as soon as reasonably possible.   ContextWeb reserves the right to an invoice IP for any overpayments made to IP, and IP agrees to pay such invoice amount no later than thirty (30) days following the invoice date.

c. Other than text provided by CONTEXTWEB, no text or incentives (such as points, gifts, prizes, premiums, cash or some other form of remuneration) may be used to encourage visitors to click on an Advertisement. If in CONTEXTWEB's reasonable determination, there has been incentivized, computerized or otherwise deceptive or artificial means used to increase impressions, page views, or click-throughs  (a "Fraudulent Activity"), CONTEXTWEB may terminate this Agreement effective upon notice and IP will forfeit all fees due under this Agreement, including those that may not be related to the Fraudulent Activity. IP agrees to indemnify CONTEXTWEB and its Advertisers for any damages or claims, including lost advertising revenue resulting from a Fraudulent Activity.

**3.  Representations and Warranties; Limitation of Liability; Indemnification.**

a.  IP warrants and represents at all times that: (i) IP has all necessary rights and authority to enter into this Agreement and to place Advertising on the Website, and  (b) in accordance with IAB guidelines, the Website will not contain:  (1) any content that is misrepresentative, defamatory, libelous, or that violates any applicable law or regulation, (2) any content that infringes or violates any  copyright, trademark, patent, right of publicity, right of privacy, moral right, or other right of any third party, (3) spyware or malware, (4) nudity, pornography, extreme graphic violence or explicit violence, or  other offensive graphics, content or language; or (5) hate content material or inappropriate or controversial subject matter of any nature, including without limitation that which pertains to illegal activity or to  hacking, craking, or warez.  IP will ensure that CONTEXTWEB tags on not placed on (and are removed from) any page on a Website that is "under construction".   To the extent CONTEXTWEB deems that the Website violates this provision, or in the event of any other breach of this Agreement, CONTEXTWEB may immediately terminate the applicable PO, without liability for payment of such campaign.

b.  Except as expressly set forth in this Agreement, neither party makes, and each party expressly disclaims, all warranties, express or implied as to the subject matter of this Agreement, including without limitation, implied warranties of merchantability,  fitness for a particular purpose and noninfringement. Without limiting the generality of the foregoing, CONTEXTWEB shall not be liable for any unavailability or inoperability of the Internet, any technical malfunction, computer error, corruption or loss of information, or the content of any Advertisement.  IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, LOST REVENUES OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES IN CONNECTION WITH THIS AGREEMENT, EVEN IF SUCH PARTY IS INFORMED OF OR OTHERWISE AWARE OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL CONTEXTWEB'S LIABILITY HEREUNDER EXCEED THE PAYMENTS MADE BY CONTEXTWEB TO PUBLISHER IN THE SIX (6) MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO THE CLAIM.

c.   Inventory Partner shall indemnify, defend and hold harmless CONTEXTWEB, its affiliates advertisers and the respective partners, agents, officers, directors and employees of each of the foregoing, from and against any loss, cost, expense, claim, injury or damage (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Losses"), whether incurred due to third party claims or otherwise, arising or resulting from or caused by any breach by Inventory Partner of any representation, warranty, or provision contained in this Agreement. Subject to the provisions of subsection (b) above, CONTEXTWEB shall indemnify, defend and hold harmless Inventory Partner and its partners, agents, officers, directors and employees from and against any Losses, whether incurred due to third party claims or otherwise, arising or resulting from or caused by any breach by CONTEXTWEB of any representation, warranty, or provision contained in this Agreement.

# ✳ CONTEXTWEB

4. **Nondisclosure**. You agree that you will not furnish any information relating to our Advertisers, policies, operations, or the terms of this Agreement to any third party without our prior written consent. Any violation of this provision shall be deemed a bad faith attempt to unlawfully interfere with our contractual relationships with our Advertisers. This Section shall survive termination of this Agreement.

5. **Privacy Policy**. Inventory Partner shall comply, or if Inventory Partner is an agency, or ad network or ad exchange, it shall ensure that its publisher and media seller clients comply, with all applicable privacy laws and regulations. Inventory Partner further agrees to post, or if Inventory Partner is an agency, ad network or ad exchange, to contractually require its clients to post, conspicuously on each Website a privacy policy that complies with all applicable laws, rules regulations, and that discloses Inventory Partner's (or the applicable client's) practices with respect to data collection, use and disclosure (each, a "Privacy Policy"), including but not limited to: (a) the types of data being collected for targeting purposes, (b) the circumstances under which such data will be disclosed to or used by third parties, and the purposes therefor, and (c) the use of one or more third parties for ad serving activities. The Privacy Policy must: (i) be linked to from each Website page on which an Ad is displayed in connection with this Agreement ,and (ii) direct end-users to an industry-wide mechanism for opting-out from receiving targeted advertising, such as the Digital Advertising Alliance ("DAA") opt-out page at http://aboutads.info/choices or the Network Advertising Initiative ("NAI") opt-out page at http://www.networkadvertising.org/managing/opt_out.asp. .
To the extent that personally identifiable information or non -personally identifiable information is collected from an end-user visiting a Website, or is merged or otherwise combined with each other, Inventory Partner represents and warrants that all appropriate consents and waivers have been or will be obtained from such end-user. Inventory Partner agrees that none of the information passed to CONTEXWEB in connection with its use of CONTEXWEB's services will contain personally-identifiable information about any individual. Inventory Partner further agrees that it will not use any information provided to Inventory Party by CONTEXWEB to violate any applicable law, regulation, Inventory's own Privacy Policy or to restore or respawn cookies cleared or deleted by end-users.    Inventory Partner shall have the right to use any performance data provided in CONTEXWEB's reporting for any purpose related to Inventory' Partner's business  that complies with applicable laws, regulations and Inventory Partner's own privacy policy.  CONTEXTWEB shall have the right to use and disclose contextual and performance data derived from ad campaigns on Inventory Partner's Sites for the following purposes: (i) in the aggregate for general reporting, such as the total number of websites we place Ads on, that may be provided to existing and potential customers, (ii) performance in connection with this Agreement, (iii) in the aggregate for internal campaign planning and targeting purposes across Inventory that CONTEXTWEB reaches, (iv) for analytical and marketing purposes, (v) if required by court order, law or governmental agency, and (vi) as otherwise permitted in CONTEXTWEB's privacy policy.

6. **Advice of Counsel.** EACH PARTY ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.  THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF ITS DRAFTING OR PREPARATION.

7. **Miscellaneous**. This Agreement will be governed by and interpreted in accordance with the laws of the State of New York without reference to conflicts of laws principles. Jurisdiction and venue for all disputes hereunder shall be in New York City, and the parties hereby expressly agree to such jurisdiction and venue. Neither party hereto may assign this Agreement, in whole or in part, without the prior written consent of the other party, and any such attempted assignment shall be void; except that no such consent shall be required where such assignment is to an affiliate or subsidiary of such party, or is in connection with the sale of all or substantially all of the assets or capital stock of such party. This Agreement will be binding on and will inure to the benefit of the legal representatives, successors and permitted assigns of the parties hereto.  PO's are non-transferable, and may not be brokered, sold, or otherwise transferred to a third party without CONTEXTWEB's prior written consent.  Sections 3, 4, 6 and 7 shall survive termination or expiration of this Agreement. All notices under this Agreement will be in writing and will be delivered by personal service, confirmed fax, confirmed e-mail, express courier, or certified mail, return receipt requested.  For CONTEXTWEB, notices shall be sent to CONTEXTWEB, Inc. 22 Cortlandt St, 18th Floor, New York, New York 10007 to the attention of both the General Counsel and the VP Business Development. For IP, notice shall be sent to the address set forth in the PO. Either party may designate a different address by written notice to the other party in accordance with this Section.  Notice will be effective on receipt.  CONTEXTWEB may, at its discretion, place terms such as "Ads by CONTEXTWEB" together with a hyperlink as part of the Advertisement placed on the Website. No failure of either party to enforce any of its rights under this Agreement will act as a waiver of such rights. If one or more provisions of this Agreement are held to be unenforceable under applicable law, then such provision(s) shall be excluded from this Agreement, and the balance of the Agreement shall be enforceable in accordance with its terms. CONTEXTWEB shall not be liable for any delay or failure to perform any of its obligations set forth in this Agreement due to causes beyond its reasonable control. CONTEXTWEB and IP shall each act as independent contractors. Nothing in this Agreement shall be deemed to create or construed as creating a joint venture or partnership between the parties. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be modified without the prior written consent of both parties.

# **Exhibit 2**

# BaronsMedia.com

4111 W. Alameda Ave
Suite #503
Burbank, CA 91505

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/30/2012 | 5571 |

Bill To

Context Web
22 Cortlandt Street, 9th Floor
New York, NY 10007

| P.O. No. | Terms | Due Date | Account # | Project |
|----------|-------|----------|-----------|---------|
| | Net 30 | 7/30/2012 | | |

| Description | Rate | Qty | Amount |
|-------------|------|-----|--------|
| Banner Display -  5,760,884 impressions | 2,083.44 | | 2,083.44 |
| Banner Display -  392,988,426 impressions | 78,597.69 | | 78,597.69 |

| | |
|---|---|
| Total | $80,681.13 |
| Payments/Credits | $-2,083.44 |
| Balance Due | $78,597.69 |

# BaronsMedia.com

4111 W. Alameda Ave
Suite #503
Burbank, CA 91505

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/31/2012 | 5642 |

Bill To

Context Web
22 Cortlandt Street, 9th Floor
New York, NY 10007

| P.O. No. | Terms | Due Date | Account # | Project |
|----------|-------|----------|-----------|---------|
| | Net 30 | 8/30/2012 | | |

| Description | Rate | Qty | Amount |
|-------------|------|-----|--------|
| Banner Display - 2,652,818 impressions | 922.87 | | 922.87 |
| Banner Display - 682,645,039 impressions | 136,529.01 | | 136,529.01 |

| | |
|---|---|
| Total | $137,451.88 |
| Payments/Credits | $0.00 |
| Balance Due | $137,451.88 |

# BaronsMedia.com

4111 W. Alameda Ave
Suite #503
Burbank, CA 91505

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/31/2012 | 5695 |

Bill To

Context Web
22 Cortlandt Street, 9th Floor
New York, NY 10007

| P.O. No. | Terms | Due Date | Account # | Project |
|----------|-------|----------|-----------|---------|
| | Net 30 | 9/30/2012 | | |

| Description | Rate | Qty | Amount |
|-------------|------|-----|--------|
| Banner Display - 1954449 impressions @ Revshare | 712.27 | | 712.27 |
| Banner Display - 938086249 impressions @ revshare | 187,617.25 | | 187,617.25 |

| | |
|---|---|
| Total | $188,329.52 |
| Payments/Credits | $0.00 |
| Balance Due | $188,329.52 |

# BaronsMedia.com

4111 W. Alameda Ave
Suite #503
Burbank, CA 91505

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/30/2012 | 5760 |

Bill To

Context Web
22 Cortlandt Street, 9th Floor
New York, NY 10007

| P.O. No. | Terms | Due Date | Account # | Project |
|----------|-------|----------|-----------|---------|
| | Net 30 | 10/30/2012 | | |

| Description | Rate | Qty | Amount |
|-------------|------|-----|--------|
| Banner Display - 817087 impressions | 490.76 | | 490.76 |
| Banner Display - 670543 impressions @ Revshare | 257.43 | | 257.43 |
| Banner Display - 2421222 impressions @ 0.25 | 605.31 | | 605.31 |
| Banner Display - 29267922 impressions @ 0.4 | 11,407.86 | | 11,407.86 |
| Banner Display - 398364619 impressions @ revshare | 30,644.74 | | 30,644.74 |

| | |
|--|--|
| Total | $43,406.10 |
| Payments/Credits | $0.00 |
| Balance Due | $43,406.10 |